UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MICHAEL D. SMYTH

v.  CASE NO. 3:12 cv 1594 (VLB)

WILLIAM E. SEIDEN

REPLY MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Rather than address the summary judgment claims Plaintiff actually made, defendant sets up "straw man" arguments and discusses those. Defendant thereby admits his inability to respond to the plaintiff's actual claims. Summary judgment should be granted for plaintiff.

Defendant re-states plaintiff's claims to be "(1) that the Plaintiff disputed the underlying debt in his November 21, 2011 correspondence, and (2) that the Defendant included costs of $350 in a pleading form "Stipulation" as the costs of filing of legal process when the Defendant did not intend to pursue said legal process." Def. Mem. at 1 (Doc. No. 22).

Instead, plaintiff claims that (1) after the dispute, defendant did not comply with the mandatory dispute requirements of the FDCPA (which defendant ignores in his brief), and (2) one cannot include post-judgment costs before suit (which defendant ignores, and instead discusses whether he intended to file suit).

In addition, contrary to Fed. R. Civ. P. 56(c), defendant relies partly on inadmissible evidence, such as hearsay, to support his arguments.

**Irrelevant whether underlying debt was owed.** Def. Mem. at 3-8 and 10-16 discusses whether the underlying debt was owed by plaintiff or by a third party as both defendant and plaintiff claimed. Whether the consumer owes any debt is "neither here nor there," Jacobson v. Healthcare Financial Services, 516 F.3d 85, 76 (2d Cir. 2008); Veach v. Sheeks, 316 F.3d 690, 692 (7th Cir. 2003) ("We first note that what is not at issue here is whether or not Veach actually had an obligation to CreditNet for $350. What is at issue is whether Sheeks' mailing to Veach complied with the FDCPA."); Keele v. Wexler, 149 F.3d 589, 594 (7th Cir. 1998). McCartney v. First City Bank, 970 F.2d 45, 47 (5th Cir. 1992); Baker v. G.C. Servs. Corp., 677 F.2d 775, 777 (9th Cir. 1982). The FDCPA is based on the premise "[t]hat every individual, whether or not he owes the debt, has a right to be treated in a reasonable and civil manner." 123 Cong. Rec. 10241 (1977) (remarks of Rep. Annunzio).

In this case, the defendant (1) did not comply with the FDCPA's mandatory requirements to cease collecting until he responded to plaintiff's dispute, and (2) violated the FDCPA by self-adjudicating postjudgment costs before even filing suit. Whether plaintiff owed the debt is irrelevant, as is defendant's extensive discussion of that hotly disputed issue. The only question is whether defendant violated the FDCPA in collecting the account.

In his response, defendant admitted another violation. As set forth in the next section, defendant had no authority or ability to file suit on behalf of UConn, a state agency. Thus, defendant has <u>admitted</u> violation of §1692e(5) which prohibits "The threat to take any action that cannot legally be taken."

**Self-adjudication of costs.** Def. Mem. 16-19. Defendant does not address the argument that he improperly imposed costs that can be awarded only after judgment. P.B. §18-5. Instead, he attempts to justify his violation by directing his entire argument to whether he intended to file suit, so that costs could later be awarded. Plaintiff had not even mentioned whether defendant intended to file suit.

Despite his intent, defendant COULD NOT file suit as a matter of law. UConn is a state agency.[1] The Governor must authorize UConn to sue,[2] and only the Attorney General can represent UConn.[3]

Defendant violated the FDCPA §§1692e and –f(1) as discussed in plaintiff's opening brief by demanding that plaintiff agree to pay the filing fee in a pre-suit stipulation when only the court could award such costs after judgment and if suit were filed.  His violation is more egregious because he *could* not file suit on behalf of the State of Connecticut.   Indeed, by bringing up the argument that he fully intended to file suit, defendant has <u>admitted</u> violation of §1692e(5) which prohibits "The threat to take any action that cannot legally be taken."

---

[1] **Conn. Gen. Stat. § 10a-109v. Perpetual succession. The university [of Connecticut] shall have perpetual succession as a body politic and corporate and an instrumentality and agency of the state.**

[2] **Conn. Gen. Stat. § 3-5. Governor to institute lawsuits for state.
The Governor is authorized to cause any suit or action at law to be brought in the name of the state, when in his judgment the interests of the state demand that such suit or action at law be brought.**

[3] **Sec. 3-125. Duties of Attorney General; deputy; assistants; associate attorneys general.  . . The Attorney General shall have general supervision over all legal matters in which the state is an interested party. . . . He shall appear for the state, the Governor . . . and for all heads of departments and state boards, commissioners, agents. . . .  in all suits and other civil proceedings . . .  in which the state is a party or is interested.**

**Failure to cease collection until verified.** Def. Mem. at 10-16 claims that plaintiff never disputed that he owed the account. Yet, plaintiff's letter repeatedly notified defendant that someone else had contracted to pay the account. The plaintiff's letter, Def. Ex B 22-2 at 7-8, stated in part:

> I have enclosed a copy of the signed agreement between Gerber and the University of Connecticut in which Gerber had agreed to support this program one hundred percent from both a financial perspective as well as a time commitment. I understood this to be a binding contract between Gerber, the University of Connecticut and myself for the entire amount which was a one-time charge divided into four payments. The only way I would be in default was if I were to discontinue the program or leave the company under my own free will. I understand the economic conditions and the workforce reductions but feel that Gerber should have honored this contract as it was signed.
>
> I truly believe that Gerber has broken a binding contract but do not have the funds to fight the matter through representation.

"Unsophisticated consumers, whatever else may be said about them, cannot be expected to assert their [FDCPA] rights in legally precise phrases." <u>Horkey v. J.V.D.B. & Associates, Inc.,</u> 333 F.3d 769, 773 (7th Cir. 2003). Plaintiff's letter asserted that he was not in default; that only a third party had contracted with UConn to pay the tuition. There can be no doubt that plaintiff disputed the validity of the debt as to himself, i.e., that the debt was not his to pay.

Def. Ex. C, Doc. No. 22-2 at 10, shows Mr. Smyth's only obligation was a guaranty to *repay* Gerber for the tuition, only upon certain occurrences, none of which happened. Def. Ex. O, Doc. No. 23-3 at 19-27 shows plaintiff's consistent position that Gerber was obligated to pay the tuition.

Once defendant received the letter claiming that the debt should be paid by someone other than plaintiff, defendant had to cease collection, or obtain

4

verification and mail it to the consumer before continuing collection efforts. He could not call the consumer in an effort to elicit payment.

Even if the dispute is not valid, or is unexplained, the debt collector must cease or investigate to comply with the FDCPA. There is no requirement that the consumer have a valid reason for disputing the debt. *See* DeSantis v. Computer Credit, Inc.*,* 269 F.3d 159, 162 (2d Cir. 2001) ("The consumer's right to take the position, at least initially, that the debt is disputed does not depend on whether the consumer has a valid reason not to pay.") "[R]egardless of the absence of a valid reason for nonpayment, the collector is obligated by the Act to cease collection, pending verification." Id.

Other courts agree. "[T]he consumer can, without giving a reason, require that the debt collector verify the existence of the debt before making further efforts to collect it." DeKoven v. Plaza Associates, 599 F.3d 578, 582 (7th Cir. 2010); Clark's Jewelers v. Humble, 823 P.2d 818, 821 (Kan. App. 1991) ("Although the term "dispute" was not used, the context of Fierro's letter clearly shows that the debt sought to be collected was contested. Credit Bureau should have refrained from further contact with the Humbles upon receiving this notice of dispute."); Mendez v. M.R.S. Associates, a New Jersey Corp., 2005 WL 1564977 *4 (N.D. Ill. 2005) ("[U]nder the FDCPA . . . a consumer debtor is entitled to dispute and receive validation of a debt with, in Plaintiff's words, 'a good reason, a bad reason, or no reason at all.'")

As required by law, the Defendant actually began to investigate plaintiff's claim that a third party owed the debt, but continued to collect without mailing

5

verification to the consumer. Def. Ex M 23-3 at 15 shows Gerber's response to his effort to investigate plaintiff's claims that the third party was responsible. (Defendant did not investigate with the creditor, which he was obliged to do.)

Based on defendant's own exhibits, plaintiff adequately disputed whether he owed the debt by explaining why someone else owed it. Even if defendant disbelieved the explanation (and he did not as shown by his demand letter to the third party, Doc. 18-3 at 6-7), he was required to comply with §1692g(b).

<u>Rule 56(a)2 Statement inadequate to oppose summary judgment.</u>

Fed. R. Civ. P. 56(c)(4) requires that "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Defendant's affidavit (Doc. No. 22-2 at 2-5) fails these tests.

D. Conn. L. Civ. R. 56(a)3 supplements the Federal Rules:  "[E]ach denial in an opponent's Local Rule 56(a)2 Statement, must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial. Defendant's Rule 56(a)2 Statement (Doc. No. 22-1) is inadequate as well

Accordingly, Plaintiff objects pursuant to Rule 56 (c)(2):  "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."

<u>Rule 56(a)2 Statement</u>. With regard to ¶ 5 of the Statements (Doc. Nos. 18-2 and 22-1), defendant does not respond directly, so the Statement is deemed

admitted. Defendant asserts "The Defendant denies that the agreement represented the entire agreement of the parties." He does not substantiate by providing any other agreement as required by the Rule.

Defendant denies ¶¶ 6 and 8, but does not substantiate his denial as required by the Rule. Accordingly, they are deemed admitted.

Defendant denies ¶ 12, but his supporting material (Ex. A, N) is inadmissible as described below.

Defendant admits but "clarifies" his response to ¶ 13 by reference to inadmissible Ex. N. Moreover, this action was filed Nov. 12, 2012 so the clarification seems doubtful on its face.

Defendant denies ¶ 14, which alleged the Nov. 12, 2012 date that he "first attempted to verify that Continental Service Group had authority to collect" on behalf of UConn, but Ex. D does not support the denial, and defendant does not provide a document which contradicts the precise allegation.

<u>Defendant's Affidavit.</u> Paragraphs 5, 13, and 14 of defendant's Affidavit, Ex. A. Doc. No. 22-2 at 2-3, describes his purported communications with third parties. Plaintiff objects to these paragraphs as hearsay.  Paragraph 14 refers to Ex. N, which was neither identified in defendant's initial disclosures nor provided in discovery. Pursuant to Rule 37(c)(1), the document may not be used.

Instead of complying with the Local Rule by submitting a statement of "Disputed Issues of Material Fact" defendant  added "facts." Plaintiff sets them out below, with his comments, based on the above discussion, capitalized.

**The Defendant submits the following statement of facts in further support of his Opposition:**

1. The Plaintiff never disputed that he attended UCONN. Exhibits A, B, I, J.

    **IRRELEVANT TO WHETHER DEFENDANT VIOLATED THE FDCPA**

2. The Plaintiff never disputed that he owed the tuition debt. Id.

    **FALSE**

3. The Defendant always intended to initiate civil process and have the Stipulation, Exhibit E, entered as an order of the Court. Exhibit A.

    **ADMISSION THAT DEFENDANT VIOLATED THE FDCPA**

4. The Defendant never represented the costs of the civil process as part of the underlying debt. Exhibit E.

    **IRRELEVANT TO WHETHER DEFENDANT VIOLATED THE FDCPA**

5. The Defendant identified a State Marshal to effectuate service of the civil process. Exhibit K.

    **ADMISSION THAT DEFENDANT VIOLATED THE FDCPA**

6. CONSERVE authorized the Defendant to initiate civil process and forwarded him advance costs to initiate such process. Exhibits A,

    **ADMISSION THAT DEFENDANT VIOLATED THE FDCPA; HEARSAY**

7. Any delay in initiating civil process was caused by CONSERVE's admitted administrative error. Exhibit A.

    **ADMISSION THAT DEFENDANT VIOLATED THE FDCPA; HEARSAY**

## CONCLUSION

Based on the undisputed facts, Plaintiff is entitled to summary judgment on the liability of the Defendant as to one or more of the three violations identified herein.

THE PLAINTIFF

BY: ____/s/ Joanne S. Faulkner____
JOANNE S. FAULKNER ct04137
123 Avon Street
New Haven, CT 06511-2422
(203) 772-0395
j.Faulkner@snet.net

### Certificate of Service

I hereby certify that on June 26, 2013, a copy of foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Joanne S. Faulkner____
JOANNE S. FAULKNER ct04137